Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5619 | **DATE** | 5/16/2000 |
| **CASE TITLE** | Hobson vs. Lincoln Insurance Agency | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendants' motion to dismiss plaintiff's amended complaint is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 1 8 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLORINE HOBSON, )
)
        **Plaintiff,** )
)
v. ) Case No. 99 C 5619
)
LINCOLN INSURANCE AGENCY, )
INC., LINCOLN ACCEPTANCE )
COMPANY, LINCOLN TRAVEL )
CLUB, INC., NATIONAL HERITAGE )
INSURANCE COMPANY, and )
STUART LISS, )
)
        **Defendants.** )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In July 1998, Florine Hobson contacted Lincoln Insurance Agency, Inc., an insurance broker located in downtown Chicago, about obtaining automobile insurance for her 1996 Dodge Stratus. Lincoln Insurance, acting as Hobson's agent, procured several policies for Hobson including an auto liability policy issued by American Service Insurance Company, a comprehensive auto policy issued by National Heritage Insurance Company, and a bail bond card and travel service issued by Lincoln Travel Club, Inc. Lincoln Insurance also arranged for Hobson to finance her policies through a premium finance contract with Lincoln Acceptance Company. Lincoln Insurance apparently failed to forward to Hobson copies of the policies, though she did receive copies of the declarations pages.

On June 11, 1999, Hobson's Dodge Stratus was stolen. Hobson filed a claim with

National Heritage, which responded by telling Hobson that it intended to investigate her claim to determine whether her loss fell within her policy's theft loss exclusion. That exclusion provided that the insurer would not pay for loss due to theft if the keys had been left in the car, the evidence indicated that the thief had not had to alter the ignition wiring to operate the car without keys, or the evidence indicated that the thief had not been required to gain access to the car through force. Whether National Heritage actually investigated the facts surrounding the theft of Hobson's car is unclear, as are the results of any such investigation. But it is clear that as of September 1999 National Heritage had not paid the claim.

On August 28, 1999, Hobson sued Lincoln Insurance, Lincoln Acceptance, Lincoln Travel, National Heritage and Stuart Liss, the president of Lincoln Insurance, Lincoln Acceptance and Lincoln Travel and a principal officer and equity owner of National Heritage, alleging, in a purported class action, violations of the Truth in Lending Act and the Racketeer Influenced and Corrupt Organizations Act, as well as supplemental state law claims for breach of fiduciary duty, breach of contract and violation of the Illinois Consumer Fraud Act. Hobson amended her complaint on September 13, 1999. The case is before the Court on defendants' motion to dismiss Hobson's amended complaint.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Pelfresne v. Stephens*, 35 F.Supp. 2d 1064, 1069 (N.D. Ill. 1999) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). In ruling on a motion to dismiss, the Court construes the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.), *cert. denied*,

510 U.S. 1012 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). With these principles in mind, the Court considers defendants' motion to dismiss Hobson's claims.

### Hobson's Truth in Lending Act Claim (Count 1)

In Count 1, Hobson alleges that Lincoln Acceptance failed to comply with the Truth in Lending Act ("TILA"). *See* Amended Complaint, ¶¶36-37. TILA only applies to transactions in which "credit" is issued to a consumer. *Kuhfeldt v. Liberty Mutual Insurance Co.*, 833 F.Supp. 632, 635 (E.D. Mich. 1993). "Credit" means "the right to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. §1602(e). Regulation Z, which interprets TILA, specifically excludes from the definition of "credit" "[i]nsurance premium plans that involve payment in installments with each installment representing the payment for insurance coverage for a certain future period of time, unless the consumer is contractually obligated to continue making payments." 12 C.F.R. Pt. 226, Supp. I, §226.2, 2(a)(14)(1) (1999). The Federal Reserve Board, which issued Regulation Z, has explained that insurance policies need not contain TILA disclosures if there is no debt relationship between the insured and the insurer for future premiums, and that, if a policy provides for a pro rata rebate in the event of cancellation for nonpayment, no such relationship is created. *See* Fed. R. Bd. Pub. Info. Ltr. 809 (May 31, 1974), *cited in Kuhfeldt*, 833 F.Supp. at 635. Courts considering whether a premium installment plan for automobile insurance creates a debt relationship have consistently held that where the insured has no obligation to continue making payments, no credit is issued, and TILA is inapplicable. *Id.* at 636 (citing *Munson v. Orrin E. Thompson Homes, Inc.*, 395 F.Supp. 152, 157 (D. Minn.

3

1974); *Gerlach v. Allstate Ins. Co.*, 338 F.Supp. 642, 648 (S.D. Fla. 1972)). Thus the Court must decide whether Hobson has adequately alleged that Lincoln Acceptance extended credit to Hobson, that is, whether the contract obligated Hobson to pay the full amount of the premiums regardless of cancellation.

The premium finance contract issued by Lincoln Acceptance and signed by Hobson provides that "if default shall be made in any payment hereunder, then the full amount shall at the option of the holder, shall become forthwith due and payable." *See* Complaint, Exhibit D, ¶2. The contract further provides that "[i]n the event of nonpayment of installment(s) by [Hobson], [Lincoln Acceptance] shall give a 10 day written notice to [Hobson] of intent to cancel." *See* Complaint, Exhibit D, ¶4. The contract further provides that after cancellation Lincoln Acceptance may:

> receive . . . in the name of the insured, all monies thereafter payable to the assured, including the proceeds of any loss so payable. The assured hereby releases and discharges and agrees to hold harmless the payee and each hold hereof, their officers, agents and employees from any liability or cause of action arising out of, or by reason of, any such cancellation and waives all rights including all unearned and return premiums at any time payable on said policy(s).
> *Id.* ¶6 (emphasis added).

Finally, the contract requires Hobson to authorize any attorney to go into court and confess judgment without process in Lincoln Acceptance's favor, presumably in the full amount of the premiums, though the contract does not specifically say what the amount of judgment would be. *Id.* ¶9. Based on these provisions, Hobson could argue that the premium finance contract kept her on the hook for the full amount of the premiums--including any unearned premiums paid at the time of cancellation. But Illinois law provides otherwise.

The Illinois Insurance Code provides that if an automobile insurance policy is canceled--

4

whether by the insurer or by the insured--the insurer must refund the unearned premium pro rated to the date of cancellation. 215 ILCS 5/143.12a. Moreover, where a premium finance company is involved in the transaction, if the premium finance agreement contains a power of attorney enabling the premium finance company to cancel the policy (which the agreement in this case does), any unearned premiums returned to the premium finance company must be refunded to the named insured (unless the refund is less than $5). 215 ILCS 5/513a11. Thus, the premium finance contract cannot be read to require Hobson to pay future premiums or even to relinquish her right to get back the unearned premiums that she had paid, and to the extent the contract does so, it is unenforceable under Illinois law. *See U.S. Nursing Corp. v. St. Joseph Medical Center*, 39 F.3d 790, 792 (7th Cir. 1994) (under Illinois law, if performance under a contract would violate a statute, the contract is void and unenforceable). In short, Lincoln Acceptance did not extend credit to Hobson, and TILA is therefore inapplicable. The motion to dismiss Count 1 is granted.

### Hobson's RICO Claim (Count 4)

In Count 4 Hobson alleges that Stuart Liss, president of Lincoln Insurance, Lincoln Acceptance and Lincoln Travel and an officer and equity owner in National Heritage,

> devised, approved and implemented a scheme or artifice to have Lincoln Insurance Agency Inc. act as broker, on behalf of the insured without disclosing its relationship with the companies from which it was procuring various products and services, or that it was not acting in the interest of the insured, or that there were material limitations on the insurance coverages obtained. Amended Complaint, ¶54.

Hobson alleges that "[t]his scheme amounted to a scheme or artifice to defraud within the meaning of the mail fraud statute, 18 U.S.C. §1341, and wire fraud statute, 18 U.S.C. §1343,"

5

and that "[t]he United States mails and interstate wires were used in furtherance of the scheme [when] Lincoln Acceptance Company used the mails to obtain payment of premiums and finance charges from plaintiff and the class members." *Id.* ¶¶55-56. Hobson alleges that Liss's scheme "victimized hundreds or thousands of consumers, extended over a period of years, continued to the present, and will continue into the future unless halted by the court, thus constituting a 'pattern of racketeering.'" *Id.* ¶57. Finally, she alleges that she and the other class members were "injured in his or her property as a result of the scheme." *Id.* ¶60.

Defendants argue that Hobson's RICO claim must be dismissed because she failed to allege two predicate acts of racketeering activity and because she failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The Court agrees. To state a claim for violation of 18 U.S.C. §1962(c), which appears to be what Hobson is attempting to do, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), *quoted in Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). A "pattern of racketeering activity" consists of at least two predicate acts of racketeering activity committed within a ten-year period. *See* 18 U.S.C. §1961(5). The predicate acts are violations of a specified list of criminal laws, including violations of 18 U.S.C. §1341 (mail fraud) and §1343 (wire fraud). *Id.* §1961(1)(B). Predicate acts of fraud must be pled with particularity, *see* Fed. R. Civ. P. 9(b), that is, "a RICO plaintiff 'must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren v. New Vision International Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). A plaintiff must also show

"that the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

Hobson's amended complaint alleges, at best,[1] one fraudulent transaction: the procurement of insurance products for Hobson without telling Hobson that it was not acting in her interest and that the products contained material limitations. Although Hobson also alleged that Liss had victimized hundreds or thousand of others, this allegation is not enough to plead the requisite pattern of fraud under Federal Rule of Civil Procedure 9(b). *See Goren*, 156 F.3d at 729; *Emery*, 71 F.3d at 1348 (conclusory allegations that a defendant also defrauded unidentified others are not enough to establish a pattern of fraud). Hobson failed to allege names, dates or any other details about the transactions involving other customers, and the allegations of conduct directed at other consumers are therefore insufficient to state a RICO claim.

Nor can the allegations of conduct directed at Hobson support a RICO claim. First, although the premium finance contract clearly contemplates ten payments to be made over time, nothing in the complaint or Hobson's response to the motion to dismiss establishes that Hobson actually paid the premiums at all, let alone that she paid them by mail or by wire transfer. But even if Hobson had alleged that she made the payments to Lincoln Acceptance by mail or wire transfer, under the circumstances of this case--i.e., where a single plaintiff made ten payments

---

[1] We say "at best" because it is not clear that the failure to disclose the affiliation, which is the basis for Hobson's claim, would constitute mail fraud. *See Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995) (the mail fraud statute does not cover "sleazy sales tactics"). *See also, id.* at 1350 ("the mail fraud statute does not codify a strict code of honor in business dealings, but rather targets only conduct that is widely recognized as fraudulent"; "mere failure to disclose, *absent something more*, does not constitute mail fraud") (Coffey, J., dissenting) (citations omitted).

7

over the course of a ten-month period as part of a single transaction and as a result sustained a single, unspecified injury--the allegations simply do not constitute a "pattern" for purposes of RICO. *See J.D. Marshall International, Inc. v. Redstar, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991); *United States Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1266-69 (7th Cir. 1990). Additionally if, as Hobson suggests, the transaction involving her insurance products is complete, that conduct no longer poses a threat of continuing criminal activity, and it therefore cannot by itself form the basis of a RICO claim. *See H.J., Inc.*, 492 U.S. at 239. Hobson's RICO claim as pled must be dismissed.

## Hobson's State Law Claims (Counts 2, 3, and 5)

In addition to alleging violations of TILA and RICO, Hobson asserts various state law claims. In Count 2, she alleges a class claim against all defendants for breach of fiduciary duty; in Count 3, she alleges a class claim against all defendants for violation of the Illinois Consumer Fraud Act; and in Count 5, she alleges an individual claim against Lincoln Insurance, National Heritage and Stuart Liss for breach of fiduciary duty. Having concluded that Hobson's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. §1367(c) (district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction). *See also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir.) (general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits) (citing *Wright v. Associated Insurance Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727-28 (1966)), *cert. denied*, 525 U.S.

870 (1998).

For the reasons explained above, defendants' motion to dismiss Hobson's amended complaint is granted.

Dated: May 16, 2000

                                                             MATTHEW F. KENNELLY
                                                             United States District Judge