## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5619 | **DATE** | 9/7/2000 |
| **CASE TITLE** | Hobson vs. Lincoln Insurance Agency | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. On Court's own motion, its prior ruling in this case, Hobson v. Lincoln Insurance Agency, Inc., 99C5619, 2000 WL 656671 (5/16/20), is vacated and withdrawn. For the reasons set forth in the attached order, defendants' motion to dismiss Hobson's amended complaint is granted in part and denied in part. The motion is granted as to Hobson's RICO claim (Count 4), without prejudice; the motion is denied as to all other claims.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 12 2000 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 29 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | |
| OR6 | courtroom deputy's initials | 00 SEP 11 PM 4: 20 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Minute Order Form (06/97)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLORINE HOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 99 C 5619 |
| | ) | |
| LINCOLN INSURANCE AGENCY, | ) | |
| INC., LINCOLN ACCEPTANCE | ) | |
| COMPANY, LINCOLN TRAVEL | ) | |
| CLUB, INC., NATIONAL HERITAGE | ) | |
| INSURANCE COMPANY, and | ) | |
| STUART LISS, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKET

SEP 1 2 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In July 1998, Florine Hobson contacted Lincoln Insurance Agency, Inc., an insurance broker located in downtown Chicago, about obtaining automobile insurance for her 1996 Dodge Stratus. Lincoln Insurance, acting as Hobson's agent, procured several policies for Hobson including an auto liability policy issued by American Service Insurance Company, a comprehensive auto policy issued by National Heritage Insurance Company, and a bail bond card and travel service issued by Lincoln Travel Club, Inc. Lincoln Insurance also arranged for Hobson to finance her policies through a premium finance contract with Lincoln Acceptance Company. Lincoln Insurance apparently failed to forward to Hobson copies of the policies, though she did receive copies of the declarations pages.

On June 11, 1999, Hobson's Dodge Stratus was stolen. Hobson filed a claim with

National Heritage, which responded by telling Hobson that it intended to investigate her claim to determine whether her loss fell within her policy's theft loss exclusion. That exclusion provided that the insurer would not pay for loss due to theft if the keys had been left in the car, the evidence indicated that the thief had not had to alter the ignition wiring to operate the car without keys, or the evidence indicated that the thief had not had to use force to gain access to the car. Whether National Heritage actually investigated the facts surrounding the theft of Hobson's car is unclear, as are the results of any such investigation. But it is clear that as of September 1999 National Heritage had not paid the claim.

On August 28, 1999, Hobson sued Lincoln Insurance, Lincoln Acceptance, Lincoln Travel, National Heritage and Stuart Liss, the president of Lincoln Insurance, Lincoln Acceptance and Lincoln Travel and a principal officer and equity owner of National Heritage, alleging, in a purported class action, violations of the Truth in Lending Act and the Racketeer Influenced and Corrupt Organizations Act, as well as state law claims for breach of fiduciary duty and violation of the Illinois Consumer Fraud Act. Hobson amended her complaint on September 13, 1999. The case is before the Court on defendants' motion to dismiss Hobson's amended complaint.

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits of the case. *Pelfresne v. Stephens*, 35 F.Supp. 2d 1064, 1069 (N.D. Ill. 1999) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). In ruling on a motion to dismiss, the Court construes the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.), *cert. denied*,

510 U.S. 1012 (1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). With these principles in mind, the Court considers defendants' motion to dismiss Hobson's claims.

<u>Hobson's Truth in Lending Act Claim (Count 1)</u>

In Count 1, Hobson alleges that Lincoln Acceptance failed to comply with the Truth in Lending Act ("TILA"). *See* Amended Complaint, ¶¶36-37. TILA only applies to transactions in which "credit" is issued to a consumer. *Kuhfeldt v. Liberty Mutual Insurance Co.*, 833 F.Supp. 632, 635 (E.D. Mich. 1993). "Credit" means "the right to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. §1602(e). Regulation Z, which interprets TILA, specifically excludes from the definition of "credit" "[i]nsurance premium plans that involve payment in installments with each installment representing the payment for insurance coverage for a certain future period of time, unless the consumer is contractually obligated to continue making payments." 12 C.F.R. Pt. 226, Supp. I, §226.2, 2(a)(14)(1) (1999). The Federal Reserve Board, which issued Regulation Z, has explained that insurance policies need not contain TILA disclosures if there is no debt relationship between the insured and the insurer for future premiums, and that, if a policy provides for a pro rata rebate in the event of cancellation for nonpayment, no such relationship is created. *See* Fed. R. Bd. Pub. Info. Ltr. 809 (May 31, 1974), *cited in Kuhfeldt*, 833 F.Supp. at 635. Courts considering whether a premium installment plan for automobile insurance creates a debt relationship have consistently held that where the insured has no obligation to continue making payments, no credit is issued, and TILA is inapplicable. *Id.* at 636 (citing *Munson v. Orrin E. Thompson Homes, Inc.*, 395 F.Supp. 152, 157 (D. Minn.

3

1974); *Gerlach v. Allstate Ins. Co.*, 338 F.Supp. 642, 648 (S.D. Fla. 1972)). Thus the Court must decide whether Hobson has adequately alleged that Lincoln Acceptance extended credit, that is, whether the contract obligated Hobson to pay the full amount of the premiums regardless of cancellation.

The premium finance contract issued by Lincoln Acceptance and signed by Hobson provides that "if default shall be made in any payment hereunder, then the full amount shall at the option of the holder, shall become forthwith due and payable." *See* Complaint, Exhibit D, ¶2. The contract further provides that "[i]n the event of nonpayment of installment(s) by [Hobson], [Lincoln Acceptance] shall give a 10 day written notice to [Hobson] of intent to cancel." *See* Complaint, Exhibit D, ¶4. The contract further provides that after cancellation Lincoln Acceptance may:

> receive . . . in the name of the insured, all monies thereafter payable to the assured, including the proceeds of any loss so payable. The assured hereby releases and discharges and agrees to hold harmless the payee and each holder hereof, their officers, agents and employees from any liability or cause of action arising out of, or by reason of, any such cancellation **and waives all rights including all unearned and return premiums at any time payable on said policy(s)**. *Id.* ¶6 (emphasis added).

Finally, the contract requires Hobson to authorize any attorney to go into court and confess judgment without process in Lincoln Acceptance's favor, presumably in the full amount of the premiums, though the contract does not specifically say what the amount of judgment would be. *Id.* ¶9. Based on these provisions, Hobson has a strong argument that the premium finance contract kept her on the hook for the full amount of the premiums--including any unearned premiums paid at the time of cancellation.

Lincoln Acceptance argues that the premium finance contract Hobson signed did not

4

amount to an extension of credit because, under Illinois law, the transaction cannot meet the standards set out above. It relies on two sections of the Illinois Insurance Code to support its argument: §143.12a and §513a11. Section 143.12a of the Code provides that if an automobile insurance policy is canceled--whether by the insurer or by the insured--the insurer must refund the unearned premium pro rated to the date of cancellation. 215 ILCS 5/143.12a. This section certainly suggests that the insured pays insurance premiums only for the period during which her insurance remains in effect. But this section says nothing about relieving the insured of her contractual obligation to continue making payments under a premium finance contract, which is a separate transaction from the insurance transaction. *See Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1045 (7th Cir. 1998) ("[t]he financing agreement is a contractual arrangement separate from the insurance policy itself"). Nor does §143.12a specify that the unearned premiums must be returned to the *insured*, as opposed to the premium finance company. Nothing in this section would prohibit the insurer, where the insured has assigned her right to the unearned premiums to a premium finance company, from returning the unearned premiums to the premium finance company. Indeed, this very situation appears to be addressed in §513a11 of the Insurance Code, the other section on which defendants rely. That section provides that where a premium finance company is involved in the transaction, "[i]n the event that the collection of return premiums for the account of the named insured results in a surplus over the amount due from the named insured, the premium finance company shall refund the excess to the named insured; however, no refund is required if it amounts to less than $5." 215 ILCS 5/513a11(e). Although it is entirely possible that this section could result in a pass through of the entire amount of the unearned premium refund from the insurer, via the premium finance

5

company, to the insured, this is not necessarily the case. In fact, the more likely scenario would be that the insurer would send the refund check to the premium finance company and the premium finance company would take its cut--i.e., whatever remains due and owing under the premium finance contract--before turning over the crumbs, if any, to the insured. The practical effect of all of this, contrary to Lincoln Acceptance's suggestion, is that the insured may wind up paying the full amount due under the premium finance contract (i.e., the full amount of the insurance premiums, plus all relevant finance and service charges) even if her insurance policy is canceled before all of the premiums have been earned. The Court therefore finds that under the facts as alleged in the complaint, the premium finance contract Hobson signed did constitute an extension of credit, and TILA therefore applies. The motion to dismiss Count 1 is denied.

### Hobson's RICO Claim (Count 4)

In Count 4 Hobson alleges that Stuart Liss, president of Lincoln Insurance, Lincoln Acceptance and Lincoln Travel and an officer and equity owner in National Heritage,

> devised, approved and implemented a scheme or artifice to have Lincoln Insurance Agency Inc. act as broker, on behalf of the insured without disclosing its relationship with the companies from which it was procuring various products and services, or that it was not acting in the interest of the insured, or that there were material limitations on the insurance coverages obtained. Amended Complaint, ¶54.

Hobson alleges that "[t]his scheme amounted to a scheme or artifice to defraud within the meaning of the mail fraud statute, 18 U.S.C. §1341, and wire fraud statute, 18 U.S.C. §1343," and that "[t]he United States mails and interstate wires were used in furtherance of the scheme [when] Lincoln Acceptance Company used the mails to obtain payment of premiums and finance charges from plaintiff and the class members." *Id.* ¶¶55-56. Hobson alleges that Liss's scheme

6

"victimized hundreds or thousands of consumers, extended over a period of years, continued to the present, and will continue into the future unless halted by the court, thus constituting a 'pattern of racketeering.'" *Id.* ¶57. Finally, she alleges that she and the other class members were "injured in his or her property as a result of the scheme." *Id.* ¶60.

Defendants argue that Hobson's RICO claim must be dismissed because she failed to allege two predicate acts of racketeering activity and because she failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). The Court agrees. To state a claim for violation of 18 U.S.C. §1962(c), which appears to be what Hobson is attempting to do, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985), *quoted in Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). A "pattern of racketeering activity" consists of at least two predicate acts of racketeering activity committed within a ten-year period. *See* 18 U.S.C. §1961(5). The predicate acts are violations of a specified list of criminal laws, including violations of 18 U.S.C. §1341 (mail fraud) and §1343 (wire fraud). *Id.* §1961(1)(B). Predicate acts of fraud must be pled with particularity, *see* Fed. R. Civ. P. 9(b), that is, "a RICO plaintiff 'must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Goren v. New Vision International Inc.*, 156 F.3d 721, 726 (7th Cir. 1998) (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). A plaintiff must also show "that the racketeering predicates are related, and that they amount to or pose a threat of continuing criminal activity." *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).

Hobson's amended complaint fails to allege a "pattern of racketeering activity" with the specificity required under Rule 9(b). Hobson offers two theories for satisfying this requirement: she argues first that each transaction with each individual class member, including her, constituted a separate predicate act, suggesting that the defendants committed hundreds or thousands of predicate acts; she then argues that defendants committed two or more predicate acts with respect to her alone because each mailing constituted a separate predicate act. The Court is not persuaded on either score. Although Hobson alleged that Liss had victimized hundreds or thousand of others, this allegation is not enough to plead the requisite pattern of fraud under Federal Rule of Civil Procedure 9(b). *See Goren*, 156 F.3d at 729; *Emery*, 71 F.3d at 1348 (conclusory allegations that a defendant also defrauded unidentified others are not enough to establish a pattern of fraud). Hobson failed to allege names, dates or any other details about the transactions involving other customers and she failed to explain how she arrived at the conclusion that Liss' scheme operated on such a broad basis. Nor has Hobson alleged that the information she needs to be able to satisfy Rule 9(b) rests exclusively within the defendants' control or is otherwise unavailable to her, which in some instances might excuse compliance with the rule's heightened pleading standard. *See Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998); *Goren*, 156 F.3d at 729 n.6.

The allegations of conduct directed at Hobson similarly fall short of the mark. First, although the premium finance contract clearly contemplates ten payments to be made over time, nothing in the complaint or Hobson's response to the motion to dismiss establishes that Hobson actually paid the premiums at all, let alone that she paid them by mail or by wire transfer. But even if Hobson had alleged that she made the payments to Lincoln Acceptance by mail or wire

8

transfer, under the circumstances of this case--i.e., where a single plaintiff made ten payments over the course of a ten-month period as part of a single transaction and as a result sustained a single, unspecified injury--the allegations simply do not constitute a "pattern" for purposes of RICO. *See J.D. Marshall International, Inc. v. Redstar, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991); *United States Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1266-69 (7th Cir. 1990). Additionally if, as Hobson suggests, the transaction involving her insurance products is complete, that conduct no longer poses a threat of continuing criminal activity, and it therefore cannot by itself form the basis of a RICO claim. *See H.J., Inc.*, 492 U.S. at 239. Hobson's RICO claim as pled must be dismissed; the dismissal is without prejudice, however, and to the extent she is able to do so, Hobson may amend her claim to cure the deficiencies noted.

### Hobson's State Law Claims (Counts 2, 3, and 5)

In addition to alleging violations of TILA and RICO, Hobson asserts state law claims for breach of fiduciary duty and violation of the Illinois Consumer Fraud Act.

1. Hobson's Breach of Fiduciary Duty Claims

In Count 2, which is a class claim, Hobson alleges that Lincoln Insurance violated the fiduciary duties it owed to its agents (Hobson and the other class members) by arranging insurance coverage with National Heritage, arranging financing with Lincoln Acceptance and arranging other insurance products with Lincoln Travel, without disclosing that all of these companies were owned and controlled by Stuart Liss and without disclosing the material limitations contained in the insurance products obtained. Complaint, ¶41. She also alleges that the other defendants induced Lincoln Insurance to violate its fiduciary duties. *Id.* ¶42. In Count 5, Hobson alleges essentially the same claim but on behalf of herself only. *Id.* ¶62, 64-65.

The defendants argue that these counts should be dismissed for four reasons. First, they argue, they cannot be held liable for failing to disclose the contents of the insurance policies because, under Illinois law, a broker's duties do not include such an obligation. The Court disagrees. As defendants correctly point out, a broker's function is primarily to faithfully negotiate and procure insurance according the insured's wishes and requirements, and Illinois law may absolve a broker from liability when he acts in good faith to satisfy the insured's interests. *See Plumb v. Fluid Pump Service, Inc.*, 124 F.3d 849, 858 (7th Cir. 1997); *Faulkner v. Gilmore*, 251 Ill. App. 3d 34, 37, 621 N.E.2d 908, 911 (1993)). But Hobson alleges that Lincoln Insurance did not meet her requirements and did not act in her interest at all; rather, she alleges, her broker acted solely out of self interest, arranging her insurance package with its affiliates not because it was in her best interest but because it stood to gain from the transactions. *See* Complaint, ¶43. Hobson alleges that the defendants engaged in self-dealing, which is unquestionably a serious violation of a fiduciary duty. *See Balderos v. City Chevrolet*, 214 F.3d 849, 853 (7th Cir. 2000) (citations omitted) (undisclosed self-dealing by an agent is a serious violation of a fiduciary duty). She also alleges that the defendants failed to give her a copy of the insurance policies, *see* Complaint, ¶15, which, together with the rest of the complaint, may be read to suggest that the defendants were deliberately trying to mislead the plaintiffs as to what their policies did and did not cover. A broker who misleads an insured violates his fiduciary duty and may indeed be held liable for any loss resulting from that violation. *See Plumb*, 124 F.3d at 858.

The defendants also argue that Hobson's fiduciary duty claims must fail because the circumstances disclosed the inter-relationship between the defendant companies--specifically, the

companies' names "imply affiliation on their face" and the transaction documents showed the exact same business address for Lincoln Insurance, Lincoln Acceptance and National Heritage. Motion to dismiss, p. 12. These facts may or may not have been enough to clue Hobson in to the relationship between the defendants. But Hobson alleges in her complaint that the relationship was not disclosed, and for purposes of resolving this motion, we must accept that as true. *See Bontkowski*, 998 F.2d at 461.

Defendants next argue that Counts 2 and 5 should be dismissed because Hobson failed to allege that any alleged breach of fiduciary duty proximately caused her loss. This is simply false. Count 2 alleges that Hobson and the other class members were damaged "in that they did not receive the due and faithful performance as agent of Lincoln Insurance Agency Inc., for which they paid, in that their agent engaged in self-dealing, presumably profitably." Complaint, ¶43. And Count 5 alleges that Hobson was damaged in that her loss has not been paid. *Id.* ¶63.

Finally, the defendants seek dismissal of Counts 2 and 5 as against Liss, National Heritage, Lincoln Acceptance and Lincoln Travel Club on the ground that Hobson has no basis for imposing liability on these parties. In making this argument, the defendants mischaracterize the allegations of Hobson's complaint. Defendants argue that the basis for liability against Liss is simply that he and his wife own Lincoln Insurance and that the basis for liability against the other companies is simply that they are affiliates of Lincoln Insurance. *See* Motion, p. 13. But the real basis for liability is the defendants' participation in the self-dealing scheme, and, as the Court has already noted, undisclosed self-dealing by an agent--and it is a question of fact as to whether any of the defendants assumed the role of Hobson's agent--is a serious violation of fiduciary duty. *Balderos*, 214 F.3d at 853. The motion to dismiss Counts 2 and 5 is denied.

## 2. The Illinois Consumer Fraud Act Claim

In Count 3, Hobson alleges that the defendants engaged in unfair and deceptive practices by having Lincoln Insurance act as Hobson's agent and having Lincoln Insurance arrange insurance coverage through National Heritage, financing through Lincoln Acceptance, and other products through Lincoln Travel Club, without disclosing that Liss owned and controlled all of these companies and without disclosing the material limitations in the insurance obtained. Complaint, ¶47. Hobson alleges that she and the other class members were "damaged" in that "they did not receive the due and faithful performance as agent of Lincoln Insurance Agency Inc., for which they paid, in that their agent engaged in self-dealing, presumably profitably, and in that they were overcharged." *Id.* ¶48. The defendants argue that this claim should be dismissed against Lincoln Insurance because Hobson has not and cannot allege any actual knowledge by this defendant of any deception and because Lincoln Insurance basically disclosed that it was related to Lincoln Travel and Lincoln Acceptance by identifying the companies' related names (they all started with "Lincoln") and disclosed that it was related to Lincoln Travel, Lincoln Acceptance and National Heritage by listing the same mailing address for all four companies. As we have already held, whether or not these facts are, as a matter of law, enough to show that the companies were related is a question we save for another day. For purposes of resolving this motion, we accept as true Hobson's allegation that the defendants did not disclose their inter-relationship. *See Bontkowski*, 998 F.2d at 461.

Defendants also argue that Count 3 should be dismissed because Hobson has not alleged any facts to establish any intent to deceive by any defendant, and because she has not alleged any damages proximately caused by any deception. Motion to dismiss, p. 14. The complaint says

12

otherwise. Hobson's complaint alleges that defendants "intended to have plaintiff and the class members rely on their deceptive acts and practices, by dealing with them through Lincoln Insurance Agency Inc." and that the defendants' conduct was "knowing and wilful." Complaint, ¶¶50-51. Her complaint also alleges that she and the other class members were damaged "in that they did not receive the due and faithful performance as agent of Lincoln Insurance Agency, Inc., for which they paid, in that their agent engaged in self-dealing, presumably profitably, and in that they were overcharged." *Id.* ¶48. Again, for purposes of resolving the motion to dismiss, we accept the allegations as true and leave for another day the question of whether Hobson can actually support the allegations. *See Bontkowski*, 998 F.2d at 461.

Finally, the defendants argue that Count 3 should be dismissed against the other defendants because "receiving the benefits of another's fraud is not actionable under the Consumer Fraud Act. . . ." Motion to dismiss, p. 14. In support of this argument, they cite *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 695 N.E.2d 853 (1998), which holds that the ICFA does not pertain to such conduct. That holding, as the language of the opinion makes clear, is limited to claims alleging so-called "secondary liability" only; if, as here, the plaintiff alleges that the defendants directly participate in the fraud and conspire to mislead consumers, even *Zekman* recognizes that a cause of action under the ICFA may indeed exist. *Zekman*, 182 Ill. 2d at 372-73, 695 N.E.2d at 860-61. *See also Pawlikowski v. Toyota Motor Credit Corp.*, 309 Ill. App. 3d 550, 562, 722 N.E.2d 767, 776 (1999). The motion to dismiss Count 3 is denied.

## CONCLUSION

On the Court's own motion, its prior ruling in this case, *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2000 WL 656671 (May 16, 2000), is vacated and withdrawn. For the reasons explained above, defendants' motion to dismiss Hobson's amended complaint is granted in part and denied in part. The motion is granted as to Hobson's RICO claim (Count 4), without prejudice; the motion is denied as to all other claims.

Dated: September 7, 2000

MATTHEW F. KENNELLY
United States District Judge