# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5619 | **DATE** | 1/18/2001 |
| **CASE TITLE** | Hobson vs. Lincoln Insurance Agency | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for reconsideration (30-1) is denied. Defendants' motion to dismiss plaintiff's third amended complaint is granted in part and denied in part. Counts II and III are dismissed; the motion is otherwise denied. Plaintiff is directed to file a 4th amended complaint by 1/26/01 which includes the TILA claim. Defendants are ordered to answer on or before 2/9/01. Plaintiff's motion for reconsideration (23-1) was previously ruled upon and is therefore terminated. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 2 2 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 JAN 19 PM 5:06 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FLORINE HOBSON, )
)
        Plaintiff, )
)
vs. ) Case No. 99 C 5619
)
LINCOLN INSURANCE AGENCY, INC., )
LINCOLN ACCEPTANCE COMPANY; )
LINCOLN TRAVEL CLUB, INC., )
NATIONAL HERITAGE INSURANCE )
COMPANY; and STUART LISS, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED

MATTHEW F. KENNELLY, District Judge:

JAN 2 2 2001

On May 16, 2000, the Court granted defendants' motion to dismiss plaintiff Florine Hobson's amended complaint, holding that Hobson's Truth in Lending Act and RICO claims (her only federal claims) each failed to state a claim on which relief could be granted. On September 7, 2000, acting on our own motion, the Court reconsidered its decision on the TILA claim. This followed the Court's decision to deny a motion to dismiss in a case raising similar TILA issues, *Harris v. Illinois Vehicle Premium Finance Co.*, No. 99 C 5411, 2000 WL 1307513 (N.D. Ill. Sept. 7, 2000). The Court vacated its May 16 ruling and issued a new Memorandum Opinion and Order in which we denied defendants' motion to dismiss as to the TILA claim and plaintiff's state law claims and dismissed the RICO claim with leave to amend. *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2000 WL 1279334 (N.D. Ill. Sept. 7, 2000). Hobson has amended her RICO claim and has added a new federal claim pursuant to 42 U.S.C.

§§1981 & 1982. Defendants have moved for reconsideration of the Court's ruling on the TILA claim and have moved to dismiss Hobson's remaining claims. Familiarity with the Court's September 7, 2000 ruling is assumed.

1.  **TILA claim**

Hobson contacted Lincoln Insurance Agency, Inc., an insurance broker, to obtain insurance for her car. Lincoln Insurance procured for Hobson a liability policy from American Service Insurance Co., a comprehensive auto policy from National Heritage Insurance Co., and a bail bond card and travel service from Lincoln Travel Club, Inc. Lincoln Insurance also arranged for Hobson to finance her payment of the insurance premiums through Lincoln Acceptance Co., a premium finance company.

In her TILA claim, Hobson alleges that Lincoln Acceptance did not provide the disclosures required by the statute. Lincoln Acceptance argued in its earlier motion to dismiss, and argues again in its motion to reconsider, that the premium finance arrangement did not involve the extension of "credit" within the meaning of TILA. In a premium finance arrangement, the premium finance company pays the insurer the premiums on behalf of the insured, who in turn repays the finance company, with interest, in installments. Regulation Z, which interprets TILA, excludes from the definition of "credit" "[i]nsurance premium plans that involve payment in installments with each installment representing the payment for insurance coverage for a certain future period of time, unless the customer is contractually obligated to continue making payments." 12 C.F.R. Pt. 226, Supp. I, §226.2, 2(a)(14)(1) (1999). That by itself does not help Lincoln Acceptance, because Hobson was not paying her premiums in installments – rather she was repaying a debt to Lincoln Acceptance. In making her payments to

the finance company, Hobson was not paying "installment[s] representing the payment for insurance coverage for a certain future period of time."

The Federal Reserve Board (which issued Regulation Z) has interpreted this provision of Regulation Z by stating that insurance policies need not contain TILA disclosures if there is no debt relationship between the insured and insurer for future premiums, and that if an insurance policy provides for a *pro rata* rebate in the event of cancellation for nonpayment, no debt relationship is created. *See* Fed. R. Bd. Pub. Info. Ltr. 809 (May 31, 1984), *cited in Kuhfeldt v. Liberty Mutual Insurance Co.*, 833 F. Supp. 632, 635 (E.D. Mich. 1993). But here no issue is raised as to whether the *insurer* (National Heritage) was required to make TILA disclosures; rather the question is whether a financing company which extended credit to an insured must do so.

Lincoln Acceptance contends, however, that the situation here is materially indistinguishable from that described in Regulation Z and the Fed's interpretive ruling. It argues that if an insurance policy is canceled for any reason, one Illinois statute requires the insurer to make a *pro rata* refund of the unearned insurance premium, and another statute provides that if a premium finance company collects return premiums greater than the amount due to it from the insured, it must refund the excess to the insured. *See* 215 ILCS 5/143.12a & 513a11(e). Lincoln Acceptance claims that by operation of these statutes, an insured who like Hobson finances her insurance premium through a premium finance contract effectively ends up with an installment plan of the type described in Regulation Z and the interpretive ruling, because the unearned premiums will be returned to her in the event of cancellation of her policy.

The Court reaffirms its disagreement with Lincoln Acceptance's argument. First, the

3

argument fails to take account of the fact that in her contract with Lincoln Acceptance, Hobson specifically waived her right to receive any returned premiums. Waivers of statutory rights are not *per se* unenforceable, and defendant cites no Illinois statute or decision barring this type of waiver. Thus under Lincoln Acceptance's contract with Hobson, the finance company was entitled to keep any returned premium. Second, the statute requiring the premium finance company to pay returned premium to the insured only requires it to pay over any premium that exceeds the amount the insured owes to the finance company. Hobson's contract with the finance company did not give her any "out" if the underlying insurance was canceled; she still owed the full amount due to the finance company. Lincoln Acceptance argues that this is not the way things actually work, but that argument raises issues that cannot be determined on a motion to dismiss under Rule 12(b)(6).

For these reasons, the Court denies defendant's motion for reconsideration.

### 2. Claim under 42 U.S.C. §§1981 & 1982

Hobson has asserted a claim under 42 U.S.C. §§1981 & 1982, which provide in pertinent part that all persons shall have the same right as white persons to make and enforce contracts and to purchase, lease, sell, hold, and convey real and personal property. She alleges that in marketing their insurance policies, defendants target minority neighborhoods which are "red lined" based on discriminatory practices by standard insurance carriers, creating a dual market for automobile insurance in the Chicago area, with members of minority groups forced into a "substandard" market. According to Hobson, defendants take advantage of the minority customers that they target by offering them inferior insurance coverage. As authority for their claim, Hobson relies primarily on *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir.

4

1973), in which the court upheld a claim that the defendants had exploited a racially segregated housing market by demanding prices and terms of African-Americans unreasonably in excess of those available to white citizens for comparable housing. *See Honorable v. Easy Life Real Estate System, Inc.*, 182 F.R.D. 553, 563 (N.D. Ill. 1998).

Defendants argue that *Clark* does not survive *Palmer v. Board of Education of Community School District 201-U*, 46 F.3d 682, 687 (7th Cir. 1995), which held that §1981 reaches only claims of "disparate treatment" and not claims of "disparate impact." Though that is certainly what *Palmer* holds, this Court does not agree that it renders *Clark* a nullity. "Disparate treatment" is another term for intentional discrimination, used to distinguish such cases from those involving neutral practices that happen to have a harder impact on minorities. *Clark* did not involve a claim that a racially neutral policy had a disparate impact; rather it involved the alleged deliberate targeting of members of racial minorities for inferior treatment. That is a claim of intentional discrimination, not disparate impact. The same is true of Hobson's allegations here. Hobson alleges that defendants have deliberately taken advantage of a racially segregated market by specifically targeting a minority clientele with an inferior product. *See* 3rd Am. Cplt. ¶¶18, 37. This theory is sufficient to state a claim of intentional discrimination or "disparate treatment."

We see nothing in *Clark* to limit its application to the real estate industry, as defendants argue. *See Ortega v. Merit Insurance Co.*, 433 F. Supp. 135 (N.D. Ill. 1977) (applying *Clark* in context of sales of credit insurance). Defendants' arguments that they lack the market power to pull off the alleged scheme, and that they in fact do not single out minority customers, may well turn out to be true, but these arguments do not provide a basis to dismiss the complaint under

Rule 12(b)(6). *See Honorable,* 182 F.R.D. at 563.

Though we deny defendants' request to dismiss Hobson's §§1981-82 claim, stating a claim under liberal federal pleading rules is one thing; proving it is another. Proof of Hobson's discrimination claim will likely be a very tough row to hoe. Plaintiff's attorneys should be advised that if it turns out that they have pursued a claim that from the outset had little or no real hope of success, it is not a foregone conclusion that they will be able to recover attorney's fees expended in pursuing that claim if there is a class-based settlement (assuming a class ends up being certified), or a verdict in their favor on other claims (as there does not seem to be much if any intertwining between this claim and Hobson's TILA claim).

### 3. **RICO claim**

The Court again dismisses Hobson's RICO claim. Hobson has failed to cure the defects in the previous version of her complaint. Specifically, she still has failed to include allegations sufficient to indicate that defendants engaged in a pattern of racketeering activity. The only change Hobson made to the RICO claim after the previous dismissal was to add references to four state court lawsuits against National Heritage (1 filed in 1996, 2 in 1998, and 1 in 1999) in which the plaintiffs sought declaratory judgments and/or damages for allegedly erroneous denials of claims (in one of the cases, an allegedly vexatious denial). These complaints and Hobson's allegations about them add nothing of substance to her previously insufficient RICO allegations. It is not particularly surprising for an insurance company to be sued from time to time for denial of claims; four such suits over the nearly four year period prior to Hobson's filing of the third amended complaint seems like a relatively modest number. The fact that Hobson can point to four alleged breaches of contract does nothing to suggest that defendants engaged in a pattern of

racketeering activity.

### 4. Claim for breach of fiduciary duty

The Court agrees with defendants that Hobson's common law breach of fiduciary duty claim fails as a matter of Illinois law. Defendants rely on an Illinois statute adopted in 1997 which provides that

> No cause of action brought by any person or entity against any insurance producer ... concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer ... to civil liability under standards governing the conduct of a fiduciary or a fiduciary relationship except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer ... of any money that was received as premiums, as a premium deposit, or as payment of a claim.

735 ILCS 2-2201(b). Hobson points out that this Court rejected a similar argument in *Harris*, but here defendants have done what the defendants in *Harris* made no effort to do: they have provided the Court with the definition of "insurance producer" and have persuaded the Court that it covers entities like Lincoln Insurance Agency. The Illinois Insurance Code defines an "insurance producer" as one who "solicits, negotiates, effects, procures, renews, continues or binds policies of insurance covering property or risks located in Illinois." 215 ILCS 5/491.1. That is exactly what Lincoln Insurance Agency is claimed to do. Though the statute containing that definition says that the definitions "apply to this Article" – namely the Insurance Code – there is no reason to believe that the Illinois legislature meant anything different when it enacted section 2-2201. Hobson cannot maintain her claim for breach of fiduciary duty.

### 5. Consumer Fraud Act claim

Defendants' arguments in support of dismissal of Hobson's Illinois Consumer Fraud Act

7

claim are all arguments that the Court has previously considered and rejected in this case. We again reject these arguments, for the reasons stated in our September 7, 2000 ruling.

### Conclusion

In sum, defendants' motion for reconsideration [30-1] is denied. Defendants' motion to dismiss plaintiff's third amended complaint is granted in part and denied in part. Counts 2 and 3 are dismissed; the motion is otherwise denied. Plaintiff is directed to file a fourth amended complaint on or before January 26, 2001 which includes the TILA claim (this is not an authorization to add any new allegations). Defendants are ordered to answer on or before February 9, 2001. Plaintiff's motion for reconsideration [23-1] was previously ruled upon and is therefore terminated.

MATTHEW F. KENNELLY
United States District Judge

Date: January 18, 2001

8