Minute Order Form (06/92)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5619 | **DATE** | 3/4/2002 |
| **CASE TITLE** | Florine Hobson vs. Lincoln Insurance Agency, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum Opinion and Order. Plaintiff's amended fee petition (75-1) is granted in part. The Court awards plaintiff's attorney's fees of $63,480 and expenses of $4,513.79 against defendant Lincoln Acceptance Co. Plaintiff's original fee petition is denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 3/5/02 date docketed | 88 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FLORINE HOBSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 99 C 5619 |
| ) | |
| LINCOLN INSURANCE AGENCY, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously approved a class-wide settlement in this case which left for later determination the issue of attorney's fees. Plaintiff has now petitioned for an award of attorney's fees and expenses.

### Background

This case was originally filed in August 1999. Plaintiff's first amended complaint, filed before defendants were required to respond to the original complaint, included an individual claim for breach of fiduciary duty and four class claims: a claim under the Truth in Lending Act against defendant Lincoln Acceptance Co.; claims for breach of fiduciary duty and for violation of the Illinois Consumer Fraud Act against all defendants; and a civil RICO claim against defendant Stuart Liss. The Court initially dismissed the TILA and RICO claims, *see Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, slip op. (N.D. Ill. May 16, 2000), and following this dismissal plaintiff amended her complaint to add a class claim for violation of the Civil Rights Act, 42 U.S.C. §§1981 and to attempt to beef up the RICO claim. The Court later

reinstated the TILA and fiduciary duty claims following reconsideration. *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2000 WL 1279334 (N.D. Ill. Sept. 7, 2000). Defendant then moved for reconsideration of the reinstatement and also moved to dismiss the Civil Rights Act and amended RICO claims. The Court denied reconsideration and declined to dismiss the civil rights claims, but dismissed the RICO claim. *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2001 WL 55528 (N.D. Ill. Jan. 18, 2001). Throughout these proceedings the TILA claim remained unaltered.

In January 2001, plaintiff moved to certify classes under her civil rights claim, her TILA claim, and her state law claims. After defendants responded to the motion, plaintiff voluntarily dismissed her civil rights claim. The Court ultimately certified a TILA class but denied class certification with respect to plaintiff's state law claims on the grounds that significant individual issues existed that likely would overwhelm the common issues. *Hobson v. Lincoln Insurance Agency, Inc.*, No. 99 C 5619, 2001 WL 648958 (N.D. Ill. June 4, 2001).

In August 2001, the Court preliminarily approved a class-wide settlement. The settlement provided for payment by Lincoln Acceptance Co., the only TILA defendant, of $60,000 to the class (including $1,000 to Hobson), the maximum amount permitted by law; another $223 to Hobson as individual damages; and reasonable attorney's fees to be determined by the Court. The settlement provided that the state law claims would be dismissed without prejudice. The Court gave final approval to the settlement on November 13, 2001.

Class counsel, the law firm of Edelman, Combs & Latturner, have petitioned the Court pursuant to 15 U.S.C. §1640(a)(3) for an award of attorney's fees. ECL's amended fee petition requested fees of $88,761.00 and expenses of $7,608.24; in the firm's reply, it conceded a

2

reduction of $2,315.25 in the fee amount.[1] A spreadsheet showing the breakdown of the original amount claimed on a by-attorney basis is found in Appendix A to this Memorandum Opinion.

In enacting the Truth in Lending Act, Congress contemplated that the statute would be enforced by private litigants acting as "private attorneys general." Upon proper proof, a court should award attorney's fees to a prevailing plaintiff sufficient to vindicate Congress' intent in this regard. *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir. 1990); *Postow v. OBA Federal Savings & Loan Association*, 627 F.2d 1370, 1389 (D.C. Cir.1980).

A reasonable attorney's fee is determined by multiplying the number of hours reasonably worked by a reasonable hourly rate. *E.g., Strange v. Monogram Credit Card Bank of Georgia*, 129 F.3d 943, 945-46 (7th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Lincoln Acceptance objects to the time and hourly rates claimed for counsel and to the time claimed for legal assistants, but they do not object to the proposed rates for legal assistants. In addressing plaintiffs' fee petition the Court has considered the factors referred to in *Hensley* as bearing on the reasonableness of a fee award. *Hensley*, 461 U.S. at 430 n.3.

### Hourly rates

ECL seeks approval of hourly rates of $350 for partners James Latturner (the primary partner on the case), Daniel Edelman, and Cathleen Combs; $200 per hour for associate James Harkness; $180 for associate Francis Greene (who took over Harkness's role in mid-2000); $170 for associate Charles Lee (who performed limited work in 1999); and rates ranging from $80 to $100 per hour for various law clerks and legal assistants. Defendant objects to these rates,

---

[1] The reply in support of ECL's fee petition requested a net attorney's fee figure of $94,053.99; we have disregarded this figure, as it did not gibe with the prior figures or with the material submitted in support of the fee petition.

3

arguing that the appropriate rates should be no higher than $275 for Latturner and Edelman, $235 for Combs, and $135 for associates.

The proper hourly rate is determined based on the market rate for the services of plaintiff's counsel. *See, e.g., Missouri v. Jenkins,* 491 U.S. 274, 283 (1989). If an attorney commonly charges by the hour, his regular billing rate is presumptively the market rate. *Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555 (7th Cir. 1999); *People Who Care v. Rockford Board of Education,* 90 F.3d 1307, 1310 (7th Cir. 1996). But if an attorney, as in this case, ordinarily works on a contingent-fee basis, a court "should look to the next best evidence – the rate charged by lawyers in the community of 'reasonably comparable skill, experience, and reputation.'" *People Who Care,* 90 F.3d at 1310 (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)).

ECL cites published information regarding rates charged for partners and associates by large law firms in the City of Chicago; these range from $140 to $550 for partners and $95 to $300 for associates. Though plaintiffs' proposed rates are within these ranges, the figures provided are not particularly helpful to the Court in determining the market rate for the attorneys in this case. First, it is anything but clear that large law firm rates provide a proper basis for comparison here; the rates charged by large law firms can be significantly inflated due to, among other things, overhead expenses which tend to be higher on a per-attorney basis than at smaller law firms like ECL (which, according to the current Sullivan's Law Directory, includes four partners and nine associates). Second, and just as importantly, we have been provided nothing regarding the particular rates within these very broad ranges for attorneys with similar levels of skill, experience, and reputation to the ECL attorneys. The Court is therefore unable and

4

unwilling to rely on the large law firm rates.

Evidence of reasonable hourly rates can also come from awards in other cases. *Spegon*, 175 F.3d at 555; *People Who Care*, 90 F.3d at 1312. This is the source of the rates proposed by defendant; in *Jackson v. Bell South Telecommunications, Inc.*, No. 98 C 1191, 2000 WL 715590 (N.D. Ill. June 2, 2000), then-District Judge Ann Williams approved rates of $275 for Latturner and Edelman, $235 for Combs, and $135 for the firm's associates. But *Jackson* was filed in February 1998, and fee petition in the case was filed in July 1998. Thus the court's decision concerned hourly rates for a time period that predates by a significant period the one at issue in the present case (August 1999 through September 2001). Under the circumstances, *Jackson* is not the final word on the hourly rates that should be used in this case.

In all but one of the cases reported by ECL for comparison purposes, the rates approved for the firm were lower than those proposed here: $235 for Combs, $275 in several cases for Latturner and Edelman, and $330 for Edelman and Latturner in one or two cases. In *Spark v. MBNA Corp.*, 157 F. Supp. 2d 330 (D. Del. 2001), the court approved rates for counsel's law firm of "$350 to 300 an hour for a partner, $200 to $135 for associates, $100 an hour for law clerks and $90 to $70 an hour for legal assistants." *Id.* at 344-45. Based on review of this and the other information provided by ECL, the Court finds that the reasonable hourly rates are $300 for Latturner and Edelman, $275 for Combs, $150 for Harkness (who was admitted to practice in 1996 and performed his work in this case in 1999-2000), $135 for Greene (who was admitted to practice in 2000); and $150 for Lee (who evidently was admitted to practice in 1996). Defendant does not object to the rates proposed by ECL for law clerks and legal assistants.

5

## Time

The Court must next determine the reasonable number of hours worked by counsel. Time that ECL spent on matters that were unrelated to the TILA claim and that had no relationship to the ultimate success on the TILA claim is not compensable. *See Smith v. Robinson,* 461 U.S. 992, 1006-07 (1984); *Hensley,* 461 U.S. at 435. In addition, we must exclude time that was not reasonably expended. "Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary ...." *Hensley,* 461 U.S. at 434 (quoted in *Strange,* 129 F.3d at 946).

### 1. Alleged unreasonable delay of settlement

Defendants argue that the Court should significantly reduce the attorney's fees because ECL unreasonably delayed settlement. Under TILA, the maximum recoverable is the lesser of $500,000 or 1% of the defendant's net worth. *See* 15 U.S.C. §1640(a)(2)(B). On February 1, 2001, defendant's counsel advised plaintiffs' counsel that defendant's net worth was between $5,000,000 and $6,000,000, making the maximum TILA award between $50,000 and $60,000, but that they were offering $75,000 to the TILA class plus $40,000 in attorney's fees. Plaintiffs responded by demanding $200,000 for the TILA class plus $60,000 in attorney's fees. Defendants replied on February 7, 2001 by increasing their offer to $83,000 plus $43,000 in attorney's fees. The settlement eventually approved by the Court in November 2001 was for less: $60,000 plus attorney's fees to be determined by the Court. Defendants argue that ECL should have accepted their earlier offers immediately, as they were better than the class had any right to recover, and that their failure to do so, combined with their later acceptance of a less

favorable settlement, should impact the amount of the fee award.

There is no question that in hindsight, the class would have been better off accepting either one of defendant's February 2001 offers. But this type of Monday-morning quarterbacking is inappropriate; we must look at matters as they appeared at the time and determine whether ECL acted reasonably. *See NAACP v. City of East Haven*, 259 F.3d 113, 119-20 (2d Cir. 2001). We believe that ECL did so. On the same day that defendants made the $83,000 offer, ECL asked for verification of the net worth figure that defendants had quoted. Defendants provided a balance sheet which confirmed that Lincoln Acceptance's net worth was just shy of $6 million. But the balance sheet contained a notation that the reader should "see accountant's compilation report and accompanying notes," which defendants did not provide. *See* Pltf. Reply, Ex. C. When ECL quite reasonably asked for that document, which might have had some bearing on the net worth figure,[2] defendants refused, accusing ECL of conducting a "fishing expedition." *See id.*, Ex. E. ECL was unwilling to rely on defendants' representation, and this was entirely reasonable – indeed their hesitation could only have been reinforced by defendants' unexplained unwillingness to produce the accountant's notes and their vehement reaction to ECL's request. Under the circumstances, the Court cannot fault ECL for declining the settlement offer, and accordingly we will not limit their attorney's fees on this basis.

In June 2001, defendants served on ECL a document entitled "Offer of Judgment" which

---

[2] The balance sheet indicated that one of the accountant's notes concerned Lincoln Acceptance's largest liability, its $1.1 million in accounts allegedly payable to its sister company, co-defendant Lincoln Insurance Agency. It is not outside the realm of possibility that the notes might have thrown some doubt on whether the entirety of this figure should be considered in determining Lincoln Acceptance's net worth for TILA purposes. At a minimum, plaintiffs' counsel acted entirely reasonably in their unwillingness to rely on the balance sheet without seeing the accompanying accountant's notes.

7

stated that it was made pursuant to Fed. R. Civ. P. 68. The amount of the offer was $60,000 to the class, $223.84 to Hobson, and reasonable attorney's fees to be determined by the Court. Plaintiffs accepted the offer within the time provided by Rule 68. Defendants then took the position that plaintiffs could not "accept" the offer and that what it had served, despite its title and text, was not really an offer of judgment at all, but rather a settlement proposal. ECL disputed this, and the Court asked the parties to brief and argue the point. We ultimately agreed with defendants' revised position and determined that an "offer of judgment" could not be made in this context and that the document should be construed as a settlement proposal. ECL ultimately accepted the proposal on behalf of the class, and the Court ultimately approved it.

Defendants attack ECL for its "insist[ence] that Plaintiff [sic] had 'accepted' the offer of judgment rather than a settlement offer, requiring research, briefing and a decision by this Court." Dfdt. Resp. at 10. The Court agrees with ECL's characterization of this argument as an "amazing display of chutzpah." Pltf. Reply at 7. If defendants did not believe that an offer of judgment could be made and accepted in a class action, they should not have made one to begin with. In short, it was defendants, not ECL, that unreasonably multiplied the proceedings in this regard. Either they knew when they made the "offer of judgment" that it could have no legal effect, or they made it without having the slightest idea of its legal effect. The Court is not sure which is worse. Either way, ECL did not act inappropriately in attempting to "accept" the offer, and the Court will not reduce its fees on this basis.

2. **Time reasonably spent**

Around the same time they filed this case, plaintiffs' counsel filed a similar action against different parties, *Harris v. Illinois Vehicle Premium Finance Co.*, Case No. 99 C 5411, that

coincidentally was also assigned to this Court's docket. When *Harris* was ultimately settled, the Court approved a fee award of $35,000 (counsel claimed to have incurred fees of just over $42,000). Defendant argues that we should approve no greater amount in this case. The Court disagrees. The two cases were not identical, and prior to settlement the defendants in this case fought much harder and longer than the defendants in *Harris*.[3] And settlement proved much more difficult to achieve in this case, requiring a greater commitment of attorney time; among other things, there was no litigation over any real or purported "offer of judgment" in *Harris*. All of this is sufficient to differentiate this case from *Harris*, and accordingly it would be inappropriate to limit the fees in this case to the amount claimed or awarded in *Harris*.

Having said that, we nonetheless believe that the amount of attorney time spent in *Harris* is of some assistance in determining the reasonableness of the attorney time claimed by ECL. The factors differentiating the two cases do not justify a fee in this case that is a good deal more than double the one we approved in *Harris* (as would be the case even after reducing the fee claim to account for the lower hourly rates we have set). It is more likely that some appreciable part of the difference is attributable to counsel's underestimation of the proportion of time spent on non-TILA claims, which played no part in the ultimate outcome, as well as to some duplication of effort.

The time spent by ECL drafting and defending the adequacy of the pleading of the RICO and Civil Rights Act claims and the state law claims, and time spent pursuing discovery requests that related exclusively to those claims, had no bearing on the outcome of the case. None of that

---

[3] We do not mean by this to suggest that the defense attorneys in *Harris* did not fight hard enough or that they settled prematurely.

9

time is properly compensable. We do not believe that ECL has eliminated from its fee request all of the time attributable to those matters. Specifically, we agree with defendant that the time spent opposing defendant's motion to dismiss the third amended complaint (which did not include a TILA claim as it had, at that point, been dismissed); pursuing plaintiff's second discovery requests (which related exclusively to the civil rights claims); and briefing plaintiff's motion to reconsider the Court's dismissal of the fiduciary duty claim should not be compensated.[4] We also agree that it is appropriate to deny compensation for the time charged for the amendments to the complaint following the first amendment, as these did not involve any changes to the TILA claim and do not appear to have contributed to the outcome of the case.[5] Finally, ECL agrees that the time spent on its motion to compel should be deducted.[6] We disagree, however, with defendant's argument that compensation should be denied altogether for counsel's attendance at the depositions of plaintiff Florine Hobson and defendant's representative Stuart Liss, as both of these were reasonably related to the issue of class certification.

On the issue of duplication of effort, the Court agrees with defendant's contention that

---

[4] This results in the following reductions: (a) motion to dismiss third amended complaint - Latturner 0.4 (10/3/00, 10/24/00); Greene 4.9 (9/21/00, 9/22/00, 9/26/00, 9/28/00, 10/3/00); (b) second discovery requests - Edelman 1.0 (9/22/00); Latturner 1.5 (10/24-26/00); Greene 8.1 (10/24-26/00); (c) motion to reconsider - Greene 6.3 (2/5/01, 2/6/01, 2/8/01); legal assistant Shores 1.0 (2/5-6/01). The total of these reductions is 1.0 hours for Edelman, 1.9 hours for Latturner, 19.3 hours for Greene, and 1.0 hours for legal assistant Shores.

[5] This results in the following reductions: Edelman 0.5 (1/20/01); Latturner 0.5 (2/22/01); Combs 0.3 (7/3/00); Harkness 5.1 (4/25/00, 5/2/00, 5/9/00, 5/24/00, 5/25/00, 7/5/00); Greene 6.4 (7/3/00, 7/5/00, 1/18/01, 1/24/01, 1/29/01, 1.0 on 1/30/01, 2/15/01, 2/16/01, 2/22/01, 2/23/01); legal assistant Regalado 0.5 (2/23/01); legal assistant Sabetto 4.0 (4/27/00, 5/4/00).

[6] This results in the following reductions: Latturner 0.2 (3/15/01); Greene 5.3 (3/15/01, 3/16/01, 3/22/01, 3/29/01).

ECL should not be compensated for having two attorneys (a partner and an associate) at the Hobson and Liss depositions. We have no quarrel with the practice of bringing a younger attorney to a deposition; this can be an important aspect of training young lawyers, and in more complicated cases there may be a substantive need to have two lawyers present. But the question here is whether the fees for this can be shifted to defendant. In this case, ECL has not justified its request for compensation for two attorneys. The Court has the same view regarding four status hearings at which ECL seeks compensation for two attorneys.[7] In addition, in several respects the Court agrees with defendant that some of the time claimed for legal assistants involved clerical tasks for which compensation is inappropriate.[8] *See Spegon,* 175 F.3d at 553. Finally, defendant claims that ECL seeks excessive compensation hours for preparation of the fee petition (a total of 13.8 hours, defendant says, though our own review suggests that the amount requested is higher). The Court agrees; the fee petition and Edelman's affidavit submitted in support of the petition appear to be standard forms used by ECL in TILA cases. Though we agree with ECL that it had to spend time culling out non-compensable time, there is no reason why that task, in addition to the time necessary to update and particularize the petition and affidavit, should have taken the amount of time that ECL claims. We will reduce by one-third the time charged by Latturner and Greene between October 16 and October 26, 2001: a reduction of 0.4 hours for

---

[7] This results in the following reductions: Edelman 0.5 (8/10/01); Greene 9.9 (2/14/01, 4/25/01, 6/8/01, 6/29/01, 8/9/01).

[8] This results in the following reductions: Regalado 0.3 (1/10/01); Butzow 6.2 (5/2/01, 5/4/01, 6/12/01, 6/13/01, 6/29/01, 7/2/01, 0.3 hours on 7/6/01, 7/16/01 (2 entries), 7/17/01, 8/1/01, 8/8/01); Roehrs 5.2 (9/1/99, 9/10/99, 9/13/99 (2 entries), 9/20/99, 9/21/99, 10/12/99, 10/21/99, 0.5 hours on 10/22/99, 0.6 hours on 10/25/99, 10/26/99, 11/1/99, 11/2/99, 11/11/99, 11/12/99, 1.0 hours on 12/6/99, 1/18/00); Shores 1.0 (0.3 hours on 2/6/01, 2/12/01, 3/23/01); Dietkus 0.4 (2/15/01).

11

Latturner and 5.0 hours for Greene. The Court rejects the remainder of defendant's arguments regarding excessive, duplicative, or otherwise non-compensable time. In particular, we do not believe that ECL claimed excessive time for inter-attorney conferences.

The result of these reductions is to cut the following hours from the amounts claimed: Edelman 2.0; Latturner 3.0; Combs 0.3; Harkness 5.1; Greene 45.9; $90-per-hour legal assistants 0.8; $80-per-hour legal assistants 17.8. We have included in Appendix B to this Memorandum Opinion a spreadsheet breaking down and totaling the reduced hours and hourly rates consistent with the Court's findings. The result is a fee award of $63,480.00.

With regard to the expense claim, ECL has agreed to deduct the $85.25 paid to D&M Auto Appraising. That serves to reduce the amount of the claim to $7,522.99. Defendant's objection to ECL's claim for expenses primarily concerns its charges for photocopying. ECL has not attempted to justify a per-page rate of $0.25; the purpose of an award of expenses is to return the attorney's costs, not to give counsel an extra profit. Based on the Court's experience with other recent cases involving expense awards, we believe that $0.15 per page represents an appropriate rate. Though it is conceivable that ECL's actual cost is greater, without some justification the Court cannot approve a higher amount. ECL has likewise failed to justify separate charges for postage and facsimiles; these are properly part of overhead, not separately-compensable expenses. The Court rejects the remainder of defendant's arguments regarding the expense claim.

Unfortunately, ECL's support for its expense claim does not break the claim down into its separate components (copying, on-line research, etc.); rather it is a single undifferentiated mass. The Court has no intention of doing the breakdown itself. Instead we will reduce the overall

12

claim by 45%, which we believe roughly approximates the amount necessary to account for the 40% reduction in photocopying charges and the deductions of postage and facsimile charges. The result is an expense award of $4,513.79.

### Conclusion

Plaintiff's amended fee petition [docket item 75-1] is granted in part. The Court awards plaintiff attorney's fees of $63,480 and expenses of $4,513.79 against defendant Lincoln Acceptance Co. Plaintiff's original fee petition is denied as moot.

```
                                    _____
                                    MATTHEW F. KENNELLY
                                    United States District Judge
```

Date: March 4, 2002

## APPENDIX A - Amounts claimed in fee petition

### 1. Through September 2001

| Name | Hours | Rate | Total |
|---|---|---|---|
| Combs | 7.7 | $350.00 | $2,695.00 |
| Edelman | 9.5 | $350.00 | $3,325.00 |
| Latturner | 85.8 | $350.00 | $30,030.00 |
| Harkness | 48.4 | $200.00 | $9,680.00 |
| Greene | 131.5 | $180.00 | $23,670.00 |
| Lee | 1.4 | $170.00 | $238.00 |
| Law Clerks | 2.0 | $100.00 | $200.00 |
| $90-per-hour Legal Assistants | 7.0 | $90.00 | $630.00 |
| $80-per-hour Legal Assistants | 83.7 | $80.00 | $6,696.00 |
| TOTAL | | | $77,164.00 |

### 2. October-November 2001

| Name | Hours | Rate | Total |
|---|---|---|---|
| Latturner | 4.6 | $350.00 | $1,610.00 |
| Greene | 16.8 | $180.00 | $3,024.00 |
| $90-per-hour Legal Assistants | 25.5 | $90.00 | $2,295.00 |
| $80-per-hour Legal Assistants | 53.2 | $80.00 | $4,256.00 |
| TOTAL | | | $11,185.00 |

## APPENDIX B - Amounts awarded

| Name | Hours | Rate | Total |
| --- | --- | --- | --- |
| Combs | 7.4 | $275.00 | $2,035.00 |
| Edelman | 7.5 | $300.00 | $2,250.00 |
| Latturner | 87.4 | $300.00 | $26,220.00 |
| Harkness | 43.3 | $150.00 | $6,495.00 |
| Greene | 101.4 | $135.00 | $13,689.00 |
| Lee | 1.4 | $150.00 | $210.00 |
| Law Clerks | 2.0 | $100.00 | $200.00 |
| $90-per-hour Legal Assistants | 31.7 | $90.00 | $2,853.00 |
| $80-per-hour Legal Assistants | 119.1 | $80.00 | $9,528.00 |
| TOTAL | | | $63,480.00 |